■ In the Matter of BOARD OF EDUCATION OF THE RAVENA-COEYMANS-SELKIRK CENTRAL SCHOOL DISTRICT, Petitioner, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents. — Weiss, J. Proceeding initiated in this court pursuant to Executive Law § 298 to review a determination of the State Division of Human Rights, dated January 30, 1984, which upheld respondent Jo Ann Larson's complaints of unlawful discriminatory practices based on age and sex.

In June 1982, respondent Jo Ann Larson, a 42-year-old female, applied for a position as a social studies teacher with the Ravena-Coeymans-Selkirk Central School District. She had previously been employed there in a similar capacity from 1962 to 1968, and had since worked as a consultant for various educational institutions in the social studies field. Larson, who held a master's degree in history, received her permanent certification to teach social studies in 1968. On August 2, 1982, petitioner selected one Bruce Stott for the position. Thereafter, on August 23, 1982, Larson filed two separate complaints with respondent State Division of Human Rights, charging that petitioner had refused to hire her because of her age and sex. By agreement, the complaints were consolidated and, after a hearing, the Division sustained the charges against petitioner, directed that

Larson be awarded the next available social studies position, and awarded compensatory damages. Petitioner commenced the instant proceeding in this court challenging the Division's determination (*see, Matter of Pritchette v Trice-Juron Ford,* 107 AD2d 955). The Division has cross-moved for enforcement.

The sole question before this court is whether the Division's determination is "supported by sufficient evidence on the record considered as a whole" (Executive Law § 298; *see, 300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 179; *see also, Matter of Pace Coll. v Commission on Human Rights,* 38 NY2d 28, 35). Larson testified that after several meetings with Harvey Durham, the department chairman, Victor Caark, the high school principal, and Milton Chodack, the superintendent of schools, she was led to believe that she was the candidate of choice. By memorandum dated July 12, 1982, Caark and Durham "highly" recommended to Chodack that Larson be appointed. Chodack, in turn, recommended Larson's appointment by notice to petitioner dated July 19, 1982. Again, on July 29, 1982, Caark corresponded with Chodack to recommend Larson's appointment, and noted that Stott was the third best choice among the remaining candidates. Larson ultimately was interviewed by petitioner at the August 2, 1982 meeting. At this same time, petitioner accepted Chodack's oral recommendation to appoint Stott, a 25-year-old male with a provisional certificate and minimal teaching experience. Based on the foregoing, we conclude that there was ample basis for the Division to find that a prima facie case of discrimination on the basis of sex and age had been shown. It follows that the burden shifted to petitioner to justify the rejection of Larson (*see, Texas Dept. of Community Affairs v Burdine,* 450 US 248, 252-256; *McDonnell Douglas Corp. v Green,* 411 US 793, 802-803; *Matter of Pace Coll. v Commission on Human Rights, supra*).

At the hearing, petitioner produced three school board members who gave several reasons for Stott's selection, particularly his more recent classroom experience as a substitute teacher at one of petitioner's schools, his willingness to participate in extracurricular activities and to refrain from outside work, and his residence in the district. Cited as detrimental to Larson was her indication that she would continue her consulting business, her reluctance to partake in extracurricular activities, and the fact that her forte was consulting work and not teaching. Additionally, Chodack testified that he recommended Stott's appointment at petitioner's request.

The conflict in testimony between petitioner's justification and Larson's prima facie case of discrimination was for the

Division to resolve (*Matter of New York City Bd. of Educ. v Batista,* 54 NY2d 379, 384). Initially, we agree with petitioner that the mere fact that all eight teachers in the social studies department are male does not constitute statistical proof of discrimination (*see, State Div. of Human Rights v Columbia Univ.,* 39 NY2d 612, 619, *cert denied* 429 US 1096; *Matter of Pace Coll. v Commission on Human Rights, supra,* pp 36-37). Although we also recognize that the Division may not lightly invade the sensitive arena of faculty appointment (*Matter of Pace Coll. v Commission on Human Rights, supra,* p 38), neither may the Division's expertise in evaluating discrimination claims be lightly disregarded (*Matter of Piekielniak v New York State Dept. of Health,* 90 AD2d 585). To be remembered is that "those who discriminate unlawfully are not likely to do so in open, plainly-appearing fashion" (*Matter of Pace Coll. v Commission on Human Rights,* 38 NY2d 28, 40, *supra*) and that " 'discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means' " (*Matter of New York City Bd. of Educ. v Batista, supra,* p 383, quoting *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 183, *supra*).

In our view, the Division's interpretation of the evidence was reasonable and sufficiently supported by the evidence. Considering the documentary evidence presented on Larson's behalf, the abrupt nomination of Stott easily lends itself to an inference of discrimination. In appointing teachers, petitioner acts upon the recommendation of its superintendent of schools, in this case, Chodack (Education Law § 3012 [1] [a]). The record confirms that prior to this incident, Chodack's recommendations were virtually unanimously approved. It was not unreasonable for the Division to reject Chodack's explanation for nominating Stott at the last minute. The record further shows that there was no residency requirement for the position, nor any policy against teachers engaging in outside work. For all these reasons, the Division was authorized to evaluate and reject petitioner's explanation as mere pretext.

As to the damage award, we note that the Division is authorized to include, as compensatory damages, an award for mental anguish suffered by a complainant, which may properly be established by the testimony of the complainant alone (*Catalina Beach Club v State Div. of Human Rights,* 95 AD2d 766, 767). Here, Larson testified that she was upset by the rejection of her application, had difficulty sleeping and had serious migraine headaches over an extended period of time that her attendance at a headache clinic failed to alleviate. Although mental anguish may properly be established on the basis of this testimony,

we are of the view that the award of $10,000, which apparently is twice the amount requested by Larson, is excessive (*see, e.g., Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights,* 35 NY2d 143; *State Div. of Human Rights v New York State Dept. of Correctional Servs.,* 91 AD2d 832; *New York City Bd. of Educ. v Sears,* 83 AD2d 959, *appeal dismissed* 55 NY2d 825; *121-129 Broadway Realty v New York State Div. of Human Rights,* 49 AD2d 422). Accordingly, we reduce the damage award for mental anguish to $5,000, which we believe more fairly represents adequate compensation.

Determination modified, without costs, by reducing the amount awarded for mental anguish from $10,000 to $5,000; cross motion for enforcement of the modified determination granted; and, as so modified, confirmed. Kane, J. P., Weiss, Mikoll and Yesawich, Jr., JJ., concur.