■ In the Matter of DOMINO SUPERMARKET, INC., Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, Respondent. —Application pursuant to CPLR article 78 for a review by the court of a determination of the respondent dated August 31, 1987, unanimously granted, and the determination of said respondent is modified, on the law, the facts and in the exercise of discretion, solely to the extent of reducing the award for compensatory damages to $5,000, and as thus modified, the determination is confirmed, without costs and without disbursements. Kupferman, J. P., concurs in the result in a memorandum in which Ross, J., concurs; Rosenberger, J., concurs in a separate memorandum in which Asch, J., concurs; Kassal, J., concurs in the result only, all as follows:

Kupferman, J. P. (concurring in the result). I am satisfied to concur in the result on the basis of the credit to be given to the determination of the State Division of Human Rights and the reduction in the award.

I cannot accept, however, the analysis of my colleague's memorandum. The comparison to the white assistant manager is inapt. The petitioner was also given an opportunity to explain or correct his situation. While one can sympathize with the petitioner and suggest that the matter could have been handled differently by the employer, that in itself does not justify a charge of discrimination.

Rosenberger, J. (concurring). The issue before before us in this CPLR article 78 proceeding is whether the determination of the State Division of Human Rights, the respondent herein, is supported by substantial evidence in the record. *(Matter of Pell v Board of Educ.,* 34 NY2d 222 [1974]; *300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176 [1978].) We confirm respondent's determination that petitioner imposed the sanction of dismissal on Robert Dunbar, formerly an assistant manager at one of petitioner's supermarkets, in a racially discriminatory manner. However, we find the award of $50,000 for mental anguish suffered by Dunbar to be excessive and we reduce it to $5,000. Dunbar, who was hired by petitioner in 1977 as a clerk, was the first and only black person employed as a manager by petitioner. He had served meritoriously, receiving commendations for catching shoplifters and a trip to Spain for his personal bravery in recovering store funds taken in an armed robbery.

In October 1982, petitioner's director of security, Harold

Axelson, was told by a store employee that another employee had seen a customer, Francine Johnson, putting canned hams into a bag in Dunbar's presence. Johnson then walked to the front of the store accompanied by Dunbar and left without paying for the hams. Axelson confronted Dunbar, who denied the allegation and explained that the customer had purchased damaged canned milk which he had permitted her to exchange for other merchandise. This was subsequently verified by a review of the "detailed" cash register tapes. Nevertheless, Dunbar was asked to submit to a polygraph examination, in violation of the existing collective bargaining agreement with Dunbar's union. Indeed, Dunbar was the only employee ever subjected to a polygraph examination by petitioner.

The polygraph was administered the next day and Axelson was told that Dunbar had been "deceptive" during the examination. When Dunbar asked Axelson about the results of the examination, he was told that "you failed it miserably." Dunbar persisted in his denial about the alleged theft of the hams, although he acknowledged that Francine Johnson had previously sampled produce, such as grapes, in his presence. After further discussion of the incident at petitioner's office, Dunbar was asked to submit to another polygraph examination. He did not, however, appear at the appointment because the night before he had been hospitalized following a drinking binge.

On October 22, 1982, Dunbar was informed that his employment was terminated because he had allowed a customer to eat grapes without paying for the merchandise. It was established at the hearing that Axelson never questioned the employee who allegedly saw Johnson putting the canned hams in her bag, nor was this employee asked to submit to a polygraph. It was also established that another white assistant manager had, on at least three occasions, taken money from the store's petty cash and given his personal checks for which there were insufficient funds available. Repeated warnings were given to this assistant manager before he was fired.

The evidence in this record amply supports the Hearing Officer's finding that petitioner's reaction to the accusation against Dunbar "can only be understood in racial terms." No other factor would explain the disparate treatment accorded to Dunbar, who had proven himself an honest and valued employee, and that given the white assistant manager. Dunbar was subjected to an improper polygraph test based on the unsubstantiated, hearsay accusation of a subordinate. The purported ground for his dismissal—allowing a customer to

eat grapes—is plainly disproportionate to the nature of the charge and is inconsistent with the previous treatment accorded to a white assistant manager.

Although Dunbar undoubtedly suffered a degree of humiliation and distress which warrants a compensatory award for mental anguish, the amount awarded in this case is plainly excessive. It appears to be more in the nature of a punitive assessment, as there was no evidence of lasting harm or impairment (see, Matter of Board of Educ. v State Div. of Human Rights, 109 AD2d 988, 990-991 [3d Dept 1985]). Accordingly, we reduce the award for compensatory damages to $5,000.