**Mary Ann LUCIANO, Plaintiff,**

v.

**The OLSTEN CORPORATION, Frank N. Ligouri, Gordon J. Bingham and Martin Gelerman, Defendants.**

**No. CV 93–4953.**

United States District Court, E.D. New York.

Jan. 21, 1996.

Order Correcting Decision
Jan. 29, 1996.

Goodman & Zuchlewski, New York City by Janice Goodman, for plaintiff.

Mayer, Brown & Platt, New York City by Gary D. Friedman, for defendants.

## MEMORANDUM DECISION and ORDER

SPATT, District Judge.

The plaintiff Mary Ann Luciano commenced this action on November 8, 1993, claiming that the defendants The Olsten Corporation ("Olsten") and three of its executive officers, Frank N. Ligouri who is Chairman of the Board of Directors and Chief Executive Officer of Olsten, Gordon J. Bingham who serves as Olsten's Senior Vice President of Sales/Marketing and Martin Gelerman, the Vice President of Human Resources for Olsten, violated her rights under federal and state anti discrimination statutes. Specifically, the amended complaint, which was filed on April 21, 1994, alleged that the defendants failed to grant Luciano a promised promotion and subsequently terminated her, as well as a disproportionate number of other female

managers and officers, because of her gender in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII") and N.Y.Exec.Law § 290 *et seq.* (the "New York State Human Rights Law"). Luciano alleged that gender based discrimination foreclosed her opportunity to attain the highest level management positions at Olsten, whose workforce is predominately female.

On November 9, 1995, following a month-long trial, the jury returned a verdict in favor of Luciano and awarded her damages in the following amounts: compensatory damages of $150,714.00 for back pay including salary and bonuses, emotional distress damages in the sum of $11,400.00, other expenses in the sum of $17,713.00 and punitive damages in the sum of $5,000,002.00. The defendants moved the Court for an order granting them judgment as a matter of law, pursuant to Rule 50(b), a new trial pursuant to Rule 59(a), or in the alternative for remittitur of the jury's damage award. The defendants challenged each category of the jury's damage award.

The plaintiff cross moves the Court for an order granting her prejudgment interest on the amount of compensatory damages awarded by the jury.

## DISCUSSION

### I. The defendants' motion for judgment as a matter of law

#### A. Rule 50(b) standard

A motion for judgment as a matter of law, known in the past as a "judgment notwithstanding the verdict" or a "directed verdict" is governed by Rule 50 of the Federal Rules of Civil Procedure, which states in relevant part:

> [i]f during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1); *see also Zahra v. Town of Southold,* 48 F.3d 674 (2d Cir.1995). The Second Circuit recently discussed the standard that is to guide the district court in its application of this rule as follows:

> "The moving party bears a heavy burden to prevail on its motion for judgment m.o.l. Fed.R.Civ.P. 50(b); *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989). In ruling on such a motion, the court must 'consider the evidence in the light most favorable to the [non moving party] and ... give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence.'" *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 367 (2d Cir. 1988).

*Concerned Area Residents for Environment v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995).

■ A motion for judgment as a matter of law should be granted following a jury's verdict only upon a finding that

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Cruz v. Local Union No. 3,* 34 F.3d 1148, 1154 (2d Cir.1994) (quoting *Bauer v. Raymark Indus., Inc.,* 849 F.2d 790, 792 (2d Cir.1988)). In deciding a motion for judgment as a matter of law, the Court must not weigh the evidence, pass on the credibility of witnesses or substitute its judgment of the facts for that of the jury. *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 59–60 (2d Cir.1993).

■ Finally, the Court is mindful that motions pursuant to Rule 50 "should be cautiously and sparingly granted." *Id.* at 59 (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524, at 541–45 (1971)).

When reviewing damage awards, all evidence and factual inferences are to be construed in favor of the non-movant and the court is to give considerable deference to the jury's determinations. *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680 (2d Cir.1993). It is appropriate to reduce a damage award where its excessive nature shocks the judicial conscience. *Id.* "If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Systems, Inc. v. Norse Systems, Inc.*, 49 F.3d 93, 96 (2d Cir. 1995).

## B. Liability

As a preliminary matter, and as noted at the trial by the Court and both parties, the defendants Ligouri, Bingham and Gelerman are not subject to individual liability under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1316–17 (2d Cir.1995). However, under certain circumstances, the individual defendants are subject to personal liability under the New York State Human Rights Law. *Id.*

## C. Back pay

42 U.S.C. § 1981a(b)(2) expressly excludes backpay and interest on backpay from the compensatory damages awarded under that section and the limitations that govern compensatory and punitive damage awards, which are set forth in subsection (b)(3). The jury found that Luciano sustained damages of $150,714.00 for back pay, including salary and bonuses.

In a footnote to the opening paragraph of their memorandum of law, the defendants state that one of the grounds for their motion for a new trial under Rule 59(a) is that the $150,714.00 back pay award is unsupported by and/or against the weight of the evidence. No support for this argument or reference to the record is presented in the defendants' papers. The defendants' reply brief states that their "use of footnote argument—to preserve for appeal issues raised in their earlier Rule 50(a) motions—was entirely proper in light of this Court's denial of those Rule 50(a) motions (Tr. at 2518–23, 3351–56), and the view expressed by the Court on the issue of liability during the November 28, 1995 telephone conference with the parties. (Tr. of Nov. 28, 1995 Conf. at 4–5)."

To digress briefly, in this Court's view, the use of footnotes in briefs other than to identify support papers such as trial transcripts, is to be discouraged. As New Jersey Court Justice Robert L. Clifford stated:

They distract. They cause the reader to drop the eyes; to absorb what is usually a monumental piece of irrelevancy or pseudo-scholarship, but is sometimes—as here—a significant pronouncement that rightly belongs in the text; and then to return, without skipping a beat, to the point of departure on the upper part of the page. The whole irritating process points up the soundness of John Barrymore's observation that "[reading footnotes is] like having to run downstairs to answer the doorbell during the first night of the honeymoon," quoted in Norrie Epstein, The Friendly Shakespeare 75 (1992).

*In re Opinion 662*, 133 N.J. 22, 32, 626 A.2d 1084, 1089 (N.J.1993) (Clifford, J. concurring). In this regard the attorneys are also directed to the Second Circuit opinion in *U.S. v. Restrepo*, 986 F.2d 1462 (2d Cir.1993), as follows:

We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review. The enormous volume of briefs and arguments pressed on each panel of this court at every sitting precludes our scouring through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to include as part of the argument.

*Id.*

Returning to the subject of back pay, the plaintiff's trial exhibits # 24 and # 30 relating to lost salary and bonuses support the jury's calculation of back pay. The plaintiff suggests that the jury used the following method of calculation based on exhibits 24 and 30: "the sum of: (a) the salary losses documented on Plaintiff's Exhibit 30;

(b) the bonuses lost documented on Plaintiff's Exhibit 24; (c) the additional salary lost by Luciano during October 1995, which is not reflected on Plaintiff's Exhibit 30; (d) minus the amounts by which Luciano's bonus exceeded the bonus of the average male VP at Olsten as reflected on Exhibit 24." *See* Gesinsky Aff. in Support of Plaintiff's Motion of Prejudgment Interest.

■ In any event, it .is not necessary to comprehend the jury's calculation with arithmetic certainty, but only to assure that is supported by the evidence. Here, one need look no further to find such support than to Plaintiff's Exhibit 30, which is a chart setting forth alleged total salary losses in the sum of $130,164.00, and Plaintiff's Exhibit 24, which is a chart setting forth alleged total bonus losses of $26,230.00. The Court declines to disturb the jury's back pay finding. Accordingly, the Court denies. the defendants' motion for a new trial on the grounds that $150,714.00 is excessive, unsupported by and/or against the weight of the evidence. Back pay, including salary and bonuses, is awarded, as per the jury verdict, in the sum of $150,714.00.

### D. Punitive Damages

■ 42 U.S.C. § 1981a(b)(1) provides that a complaining party may recover punitive damages if there is a demonstration that the respondent discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." The jury awarded punitive damages in the amount of $5,000,002.00 against the Olsten Corporation. The defendants argue that there was no evidence to support this award.

Citing portions of the Congressional Record, the defendants assert that Section 1981 was intended to limit the availability of punitive damages to cases of 'extraordinarily egregious' wrongdoing. Defendant's memorandum of law at p. 13 (citing 137 Cong.Rec. H9543 (1991) and 137 Cong.Rec. S15473 (1991)). The defendants cite a Second Circuit opinion, which discusses the "Dole/ Hyde" memoranda that sets forth this standard. *See Butts v. City of N.Y.*, 990 F.2d 1397 (2d Cir.1993). Discussing the issue of retroactivity in *Butts,* the Second Circuit observed that the statement of President George Bush upon signing the 1991 Civil Rights Act included a directive to the executive branch that the "Dole/Hyde" memoranda be treated as "authoritative interpretive guidance."

However, even the pronouncement of former President Bush does not require the Court to vacate the punitive damage award in this case. There is no indication that the jury applied any less stringent standard that the one set forth in the statute itself, namely discrimination with malice or reckless indifference. As President Bush noted in the same statement mentioned above, defendants are protected against unfair application of the statute by the cap on jury awards. *See* 1991 WL 296795 (Leg.Hist.) P.L. 102–166, Civil Rights Act of 1991, Statement of President George Bush Upon Signing S. 1745 (November 21, 1991).

The defendant's reference to language that was discussed in the pre-summation charge conference, but that was ultimately not part of the charge, namely that punitive damages are available "for some extraordinary misconduct ... maliciously or wantonly or oppressively done" is unpersuasive. Similarly, the facts and circumstances of the cases that the defendants rely upon to illustrate that the award is inappropriate or excessive differ from this case. *See Ward v. Papa's Pizza To Go, Inc.*, 907 F.Supp. 1535 (S.D.Ga.1995) (defendant's motion for summary judgment granted where plaintiff failed to provide a modicum of concrete support for her position of malicious or reckless discrimination by a defendant who refused to hire plaintiff stating a concern that her seizure disorder might cause injuries in the workplace); *Braverman v. Penobscot Shoe Co,* 859 F.Supp. 596 (D.Me.1994) (granting summary judgment to the defendant with regard to a punitive damage claim connected to actions for intentional and negligent infliction of emotional distress that were dismissed because the plaintiff failed to show that the defendant did not act in a reasonably prudent manner); *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771 (D.Nev. 1992) (in hostile environment case, summary judgment was granted to defendants who were supervisors of alleged sexual harasser

of plaintiff because plaintiff did not plead sufficient facts to find maliciousness or reckless indifference); *see also Gallo v. John Powell Chevrolet,* 779 F.Supp. 804 (M.D.Pa. 1991) (plaintiff car salesman's employer exhibited "lack of sensitivity" but not reckless indifference); *Mojica v. Gannett Co.,* 1991 WL 330941 (N.D.Ill Dec. 13, 1991) (no evidence that failure to give the plaintiff disc jockey pay increases and favorable shift assignments was malicious or callously indifferent), *aff'd in part, rev'd in part,* 7 F.3d 552 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994).

In the Court's view, the jury's punitive damages award was supported by the evidence. For example, the jury heard testimony that Luciano was given greater job responsibilities without commensurate support staff. The jury also heard the testimony from the plaintiff regarding the defendant Gelerman, a Vice President of Olsten who was the head of Olsten's Human Resources Dep't and its Equal Employment Opportunity Officer, as follows:

> Well, he [Gelerman] became livid and yelled and screamed at me. He was very abusive. He used extremely hostile language to me. He poked his finger very close to my face and it was very close to me and really attempted to harass and intimidate me and he called me a bitch.

Trial Transcript at p. 2486. This testimony was never refuted by the defendant Gelerman, although the Court gave the defendants the opportunity to do so. See also *Benjamin v. United Merchants and Manufacturers, Inc.,* 873 F.2d 41, 44 (2d Cir.1989), which notes in the context of an ADEA claim that it is particularly egregious for a person responsible for assuring a company's compliance with discrimination laws to fail to determine whether an employee's discharge is for impermissible grounds. Gelerman held just such a position with Olsten, namely that of EEOC officer and head of the Human Resources Department. The jury could find that Olsten did not make a reasonable, good faith effort to ensure that its actions with regard to Luciano were consistent with the provisions of Title VII. *See id.*

The jury also considered other evidence to support a finding that the defendants acted with reckless indifference to the plaintiff's rights with regard to gender based discrimination, such as statistical evidence of wage disparities between men and women in upper level management positions at the Olsten Corporation, as well as disparities in the numbers of men and women holding those positions. Furthermore, the jury was free to assign whatever weight they believed appropriate to Olsten's evidence regarding the hirings and promotions following the plaintiff's termination. Indeed, as the plaintiff notes, such evidence could support an inference that Olsten sought to remedy prior discrimination by the post 1992 appointments. A cynical view of these alleged ameliorative acts recognizes that Olsten knew at that time that it could face a "glass ceiling" discrimination law suit, or so the jury could find.

Also in support of the jury finding of reckless indifference, the jury heard testimony by the defendant Gelerman that he did not investigate the gender based disparities in Olsten's workforce, nor did he have a policy or practice of investigating terminations to assure that they were nondiscriminatory. There was also testimony regarding the promotion of male employees who had extremely poor performance records as well as testimony regarding new positions being created for male employees whose positions were eliminated. The jury also weighed the testimony regarding Luciano's performance and qualifications, and the fact that she was not promoted when such a promotion was promised in writing by the then Chairman and Chief Executive Officer, William Olsten. The jury could also consider that Luciano was never offered another position when Olsten allegedly eliminated the one she held. Of course, the jury determined that Luciano's position was not eliminated when she was terminated.

Furthermore, the Court does not agree with defendants' assertion that comments made to *Newsday* by one of the jurors reveal that the jury based its verdict solely on statistical evidence concerning the composition of Olsten's work force. The defendants cite the following passage from

Newsday Nov. 24, 1995 at A6, A73 allegedly quoting the jury foreperson:

> "The defense tried to play down" differences in salaries and promotions.... They brought up individual cases of males and females. They really tried to open up some case files and say that this is why there are some differences here. It didn't cut through the inference of a pattern of problems. We felt there was a pattern. What we did in punitive damages was to try to make a statement that we acknowledged that fact."

The defendants contend that this alleged quote in some manner establishes that the punitive damages award was "obviously" based on statistics that will not support an inference of malice or reckless indifference. Whether or not the defendants are correct in their interpretation of the meaning of these alleged comments, the juror's statements may not be used to attack the verdict. As the Second Circuit has stated,

> It is well-established that evidence from a jury or juror may not be used to impeach the jury's verdict. *McDonald v. Pless,* 238 U.S. 264, 267–69, 35 S.Ct. 783, 784–85, 59 L.Ed. 1300 (1915); *see U.S. v. Dioguardi,* 492 F.2d 70, 79 (2d Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974). Federal Rule of Evidence 606(b) provides:
>
> > [A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ... or concerning his mental processes in connection therewith.... Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101, 111 (2d Cir.1985). Attacking the verdict with a juror's comments "would, as the Supreme Court in *McDonald v. Pless* feared, 'make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.'" *Id.* (quoting *McDonald,* 238 U.S. at 267–68, 35 S.Ct. at 784–85).

The defendants argue that the jury heard testimony that the plaintiff's termination was handled in a professional, and courteous manner in private, with offers of severance pay and access to human resource professionals and time to wind up her affairs before leaving the company. This, the defendants argue, leads to the "inescapable conclusion" that punitive damages were awarded based on statistical evidence and not the defendants' conduct toward the plaintiff. However, in the Court's view, the evidence that was favorable to the defendants was not so overwhelming that reasonable and fair minded persons could not arrive at a punitive damage verdict against Olsten. *See Cruz, supra,* 34 F.3d at 1154.

██ The defendants argue that if punitive damages are awarded in this case, then every act of discrimination would require punitive damages as a matter of law. *See Mojica v. Gannett Co.,* 1991 WL 330941 (N.D.Ill.1991). This case differs from the *Mojica* case where the court found that the evidence supported a finding of discrimination in that the plaintiff was denied promotions, raises and favorable job assignments because of her race. *Id.* However, in *Mojica,* the court also found that the evidence showed that the defendant employer "remained friends" with the plaintiff and intervened to find her work in another part of the company when her division was closed. *See id.* This case differs from *Mojica* where the court found "there is no evidence that this [failure to give raises and favorable shift assignments] was done with malice, either expressed or implied, or with callous indifference or callous disregard or other evil motive." *Id.* As the defendants note, "a finding of liability for discrimination against a defendant does not automatically entitle the prevailing plaintiff to an award of punitive damages." *See Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314 (7th Cir.1985). However, in the Court's view this jury gave careful consideration to the instruction regarding punitive damages, weighed the evidence and reasonably concluded that the defendant Olsten's conduct toward the plaintiff was characterized by malice or reckless indifference, and such a finding is supported by the evidence.

42 U.S.C. § 1981a(b)(3)(D), the section applicable to employers of more than 500 employees, limits the amount of compensatory and punitive damages awarded to $300,000.00. The Court has reservations as to the reasoning of the Seventh Circuit that the maximum award allowable by Title VII should be reserved for the most egregious cases. *See Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344 (7th Cir.1995). One of the purposes of punitive damages is to deter future conduct by inflicting a noticeable financial impact. *See e.g., TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, ——, 113 S.Ct. 2711, 2723, 125 L.Ed.2d 366 (1993) (the financial position of the defendant is a relevant consideration in a punitive damage award). Here, Olsten requested that the jury be charged that it is financially able to pay any punitive damage award. This was done to avoid delving into the Olsten financial picture, which would probably show that the company's income and assets are substantial. The defendants themselves draw the Court's attention to another Seventh Circuit case that states, "We will set aside a jury's award of punitive damages only if we are certain that it exceeds what is necessary to serve the objective of deterrence and punishment.... We think it reasonable to suppose that a sizeable award is both suitable and necessary to punish and deter a corporation of this size." *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1287 (7th Cir.1995) (discussing a defendant that employed more than 300 employees and had gross annual revenues of several million dollars). With regard to a company as large and apparently financially well situated as the Olsten Corporation, a punitive damage award of $300,000.00 is modest and is certainly suitable and necessary to support the objectives of deterrence and punishment.

The defendants' motion for judgment as a matter of law, vacating the jury's award of punitive damages is denied. Pursuant to the provisions of Section 1981a(b)(3)(D), the punitive damage award against the defendant Olsten Corporation in the amount of $5,000,-002.00 is hereby reduced to the sum of $300,-000.00.

The defendants alternatively seek a new trial or a new trial on the issue of damages. Under Fed.R.Civ.P. 59(a), "[i]f a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Systems, Inc. v. Norse Systems, Inc.,* 49 F.3d 93, 95 (2d Cir.1995) (the trial court does not have the authority to reduce unsupported, excessive damages without offering the prevailing party the option of a new trial). This case, which is governed by Title VII's damage limitation, presents a different circumstance for the Court than one in which it is asked to determine whether the punitive damage award is so shocking to the judicial conscience as to justify a discretionary finding of excessiveness. *See id.* (no abuse of discretion to reduce $1 million punitive damage award in the absence of evidence of the defendants' net worth or evidence indicating why the high figure was necessary to serve purposes of deterrence.).

The Court takes note of the recent decision of the Eighth Circuit in *Pulla v. Amoco Oil Co.,* 72 F.3d 648 (8th Cir.1995). In *Pulla,* the Court of Appeals reversed a punitive damage award as violative of the due process clause, stating, among other things, that "a defendant's wealth cannot alone justify a large punitive damage award." *Id.* Holding that a $500,000.00 punitive damage award, where $2.00 was awarded for actual damages, was unreasonable for purposes of the due process clause, the *Pulla* court noted that (1) the plaintiff did not present evidence that the complained of conduct stemmed from a company policy of the defendant employer; (2) there was no evidence of deliberate wrongful conduct on the part of the defendant; and (3) the ratio between the punitive damage award and the actual damage award, which was 250,000:1, bore no reasonable relationship to the harm. *Id.* The case before this Court differs significantly in each respect, namely (1) the plaintiff did introduce evidence to support a finding that the complained of conduct arose from a company policy; (2) there was also evidence to demonstrate that the wrongful

conduct was malicious or recklessly indifferent; and (3) the ratio between the punitive damages permitted by Title VII and the other damages awarded in this case is less than 2:1, and the award is in proportion to the harm that occurred. Furthermore, the wealth of the defendant Olsten Corp. was deemphasized in this case. In fact, no evidence of the defendants' income or assets was adduced. For these reasons, the punitive damage award here does not raise the constitutional concerns addressed by the *Pulla* court. Even if *Pulla* represented the standard for this circuit, the Court's decision regarding the present punitive damage award would not be affected, because the award does not conflict with the considerations reflected in that standard.

The Court perceives no factual or legal reason to retry this case and denies the defendants' motion for a new trial on any issue.

### E. Emotional distress

■ The defendants argue that the jury's award of $11,400.00 for emotional distress should be vacated as excessive or reduced to $5,000.00, citing cases in which that amount has been deemed an appropriate award for "garden variety" emotional distress of a type that did not require medical treatment. *Binder v. LILCO*, 847 F.Supp. 1007, 1028 (E.D.N.Y.1994) (court found $497,738.00 jury award for pain and suffering in ADEA and NYSHRL action was excessive and ordered new trial unless plaintiff agreed to remittitur to $5,000.00), *aff'd in part*, 57 F.3d 193, 202 (2d Cir.1995); *In re Quality Care, Inc. v. Rosa*, 194 A.D.2d 610, 611, 599 N.Y.S.2d 65, 66 (2d Dep't 1993) (ordering reduction of $10,000.00 award for mental anguish and humiliation under NYSHRL to an amount no greater than $5,000.00); *Pioneer Group v. State Div. of Human Rights*, 174 A.D.2d 1041, 572 N.Y.S.2d 207, 208 (4th Dep't 1991) (reducing $10,000 award for mental anguish granted by NYS Div. of Human Rights to $5,000.00, for the reason that $10,000.00 was excessive as a matter of law); *In re New York City Transit Auth. v. State Div. of Human Rights*, 160 A.D.2d 874, 875, 554 N.Y.S.2d 308, 309 (2d Dep't 1990) (vacating $75,000 compensatory damage award and holding that any award over $5,000 would be excessive) (2d Dep't), *amended on other grounds*, —— A.D.2d ——, 560 N.Y.S.2d 880 (2d Dep't 1990); *Cosmos Forms, Ltd. v. State Div. of Human Rights*, 150 A.D.2d 442, 541 N.Y.S.2d 50, 51 (2d Dep't 1989) (reducing a $35,000.00 mental anguish award to $5,000.00); *In re Trans World Airlines, Inc. v. New York Executive Dep't*, 147 A.D.2d 575, 576, 537 N.Y.S.2d 868, 870 (2d Dep't 1989) (vacating a mental anguish award of $5,000.00 based on depression alone); *Board of Ed. v. State Div. of Human Rights*, 109 A.D.2d 988, 990–91, 486 N.Y.S.2d 469, 472 (3d Dep't 1985) (reducing a mental anguish award under NYSHRL from $10,000.00 to $5,000.00, where the plaintiff requested only $5,000.00).

Initially, the Court notes that an amount that may have been excessive five to ten years ago, may be reasonable today simply by virtue of inflation. The defendants rely heavily on Judge Mishler's decision in *Binder, supra*, where the jury awarded $497,738.00 for pain and suffering based on testimony by the plaintiff that finding another job was difficult, took longer than he expected and was not encouraging; that he felt alone, that it took a long time to get on his feet and that "the sum and substance of it was that I was completely alone, having nothing to really work with." *Id.* at 1028. The Court does not agree that this "makes it clear that an award for 'garden variety' emotional distress should not exceed $5,000.00. In this Court's view the testimony relating to Luciano's emotional distress differs from that of the *Binder* plaintiff in a way that properly justifies a higher damage award.

To begin, the Court finds that the jury's award for emotional distress was supported by the record. The Court would not have disturbed a greater amount. We are dealing with a high-level career woman who, instead of being promoted to Vice President as promised in writing by the then Chairman and Chief Executive Officer, was terminated, as the jury found. There was testimony that as a result of the termination Luciano was hurt, shocked, upset, overcome with sadness and depression, that she cried, worried about

finances, had trouble sleeping and eating and felt purposeless. The jury could consider all of these factors in a damage award for emotional distress even without the testimony of a physician. An award of $11,400.00 based on this evidence is not so excessive as to shock the Court's conscience. There is case law to support an award for emotional distress of that amount and higher. *See e.g., Whitford v. Frederick Goldman Inc.,* 1995 WL 511134 (S.D.N.Y.1995) (in pre 1991 case, awarding $18,000.00 in back pay under Title VII and $100,000.00 in compensatory damages under state human rights law where plaintiff produced evidence that she had emotional and financial difficulties and was traumatized and humiliated following her termination); *Hamilton v. New York City Comm'n on Human Rights,* 199 A.D.2d 223, 606 N.Y.S.2d 166 (1st Dep't 1993) ($20,000.00 award for mental anguish is not shocking to one's sense of fairness).

Based on the evidence presented in this case, the Court finds that the jury's award of $11,400.00 for emotional distress was fully supported by the evidence and reasonable. Accordingly, the defendants' motion to vacate or reduce that award is denied.

### F. Other expenses

 The defendants argue that the Court should reduce the jury's award of $17,713.00 for other expenses. The Court does not agree. The plaintiff expressly sought $2,500.00 for job search expenses and $3,538.00 for early withdrawal tax penalty from her IRA account. As to other expenses, the Court instructed the jury as follows;

> You may also award as part of the damages other incidental monetary losses incurred by Ms. Luciano, *such as* the cost of seeking new employment and the tax penalty that the paid as a consequence of invading her individual retirement account.

Trial Transcript at p. 4121 (emphasis supplied). The Court did not limit the jury's consideration to those items. It is apparent from the amount of the "other expenses" award that the jury included $11,675.00 that Luciano paid in taxes on the $35,378.00 that she withdrew from her IRA account.

 Luciano's 1992 and 1993 tax forms were in evidence and available for consideration by the jury. The jury may award more than the plaintiff asks if the amount is supported by the evidence. Because the $17,713.00 award for other expenses is supported by the evidence, the Court denies the defendants' motion to reduce that sum.

### G. Allocation of the compensatory damages for emotional distress and other expenses

The plaintiff brought claims under both Title VII and New York Human Rights Law. In instructing the jury the Court explained:

> [t]he legal standards and the elements of proof governing your decisions with regard to the plaintiff's claims under both the federal Title VII and the New York State Human Rights Law, are essentially similar. Where there is a difference, I will instruct you as to the points of difference. (p. 67 of charge)

> The ultimate goals of you as the factfinders in both the federal and New York State gender discrimination actions are the same—to determine whether an adverse employment decision was made by the defendants motivated by the plaintiff's gender. (p. 67)

> . . . .

> Both federal and state law make it unlawful for an employer to intentionally discriminate against any employee by failing to promote that person, or by terminating that person's employment motivated by that person's gender. (p. 68)

> . . . .

> I again advise you that, with certain differences, which I will explain to you now and later, the New York State Human Rights Law claim tracks the federal discrimination claim, so, except for one particular instruction, I am not going to have to instruct you separately as to the New York State Human Rights Law claim, it is the same as the federal claim. (p. 69)

> However, there is this difference, I instruct you that in the federal discrimination claim, the only defendant in the case is the Olsten Corporation, and not the three

individual defendants. In the New York Human Rights claim, the defendants in the case are all four defendants, namely, the Olsten Corporation, Frank Ligouri, Gordon Bingham and Martin Gelerman. (p. 69–70).

. . . .

As I advised you previously, under the federal Title VII statute, an individual person cannot be held liable for employment discrimination. However, under the New York State Human Rights Law, an individual person can be held liable for employment discrimination if the plaintiff proves, by a preponderance of the evidence, that (1) this person had the power to hire or fire the plaintiff, or (2) this person aided, abetted, incited, compelled or coerced the commission of an unlawful discriminatory act, or attempted to do so. (p. 116)

. . . .

### Double Recovery and Compensatory Damages

I have said that, if you return a verdict for the plaintiff, you must award her such sum of money as you believe will fairly and justly compensate her for any monetary damage or injury you believe she actually sustained as a direct result of a defendant's conduct. In this case, the plaintiff claims that the defendants violated her rights in two ways: (1) by discriminating against her by reason of her gender in failing to promote her to vice president, and (2) by discriminating against her by reason of her gender in terminating her. If you find that the plaintiff proved *both* discriminatory claims, you must remember, in calculating the damages, that the plaintiff is entitled to be compensated only *once* for the monetary damages and injures she actually sustained.

In sum, you must be careful in the determination of the proper measure of these damages, *that you do not award double compensation* for a single monetary damage or injury resulting from violation of two different claims. (pp. 134–5).

The defendants did not object to the Court's instructions regarding the similarities between Title VII and the New York Human Rights Law regarding legal standards, elements of proof and damages. Further, the Court notes that the defendants did not request the Court to direct the jury to identify the particular law under which the damages were being awarded.

The plaintiff urges the Court to allocate the compensatory damages to her claims under the New York Human Rights Law, so she may recover that amount in addition to the $300,000.00 maximum award under Title VII. The Court finds no authority expressly authorizing or prohibiting such allocation of the damage award. However, the Court notes that the New York Human Rights Law does provide for recovery of damages for emotional distress and out of pocket expenses. *See e.g., Cullen v. Nassau County Civil Service Commission,* 53 N.Y.2d 492, 442 N.Y.S.2d 470, 425 N.E.2d 858 (1981).

The federal $300,000.00 damage cap applicable in this case does not apply to New York state employment discrimination claims. See 42 U.S.C. § 2000e–7, which provides:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penaltys, or punishment provided by any present or future law of any State.

Clearly, Title VII does not relieve a defendant from liability and the award of damages under state law where a jury has found such a violation under both laws pursuant to the charge of the Court given without exception.

In support of her argument to allocate damages to the state law claim, Luciano notes the Second Circuit's preference for permitting a plaintiff to be paid under the liability theory that provides the most complete recovery, citing *Magee v. United States Lines,* 976 F.2d 821 (2d Cir.1992) (citations omitted).

In the Court's view, a decision to permit Luciano to benefit from the remedy provided by state law does not conflict with the congressional purpose of making employment discrimination awards reasonable, and is expressly provided for in the statute. Accordingly, the Court will allocate the $11,400.00 emotional distress award and $17,713.00

"other expenses" award to the plaintiff's claim under New York Human Rights Law.

## II. The plaintiff's motion for Prejudgment Interest

■■■■ The plaintiff seeks prejudgment interest on the pecuniary loss awards, namely the back pay and "other expense" awards. Title VII authorizes prejudgment interest and leaves the decision to award such interest to the discretion of the district court. *See e.g., Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 144 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *see also Proulx v. Citibank,* 681 F.Supp. 199 (S.D.N.Y.1988), *aff'd,* 862 F.2d 304 (2d Cir.1988). The defendants oppose an award of prejudgment interest and, if prejudgment interest is awarded, oppose the plaintiff's proposed computation of the proper amount.

■■■■ The Second Circuit's decision in *Saulpaugh,* guides the Court's determination of this issue. *See Saulpaugh, supra,* 4 F.3d at 144. In that decision, Judge Altimari wrote:

> Title VII authorizes a district court to grant pre-judgment interest on a back pay award. *See e.g., Clarke v. Frank,* 960 F.2d 1146, 1153–54 (2d Cir.1992). Its purpose is to prevent an employer from attempting "to enjoy an interest-free loan for as long as it can delay paying out back wages." *Id.* at 1154 (citation omitted). Therefore, this Court has held that "it is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back pay award." *Id.* (emphasis in original). Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if the interest is compounded.

*Id.* at 145. Further, a successful civil rights plaintiff is ordinarily entitled to an award of back pay from the date of the discriminatory action until the date of judgment. *Sands v. Runyon,* 28 F.3d 1323 (2d Cir.1994).

■■■■ The primary purpose of Title VII, with regard to aggrieved employees, is remedial. *See e.g., United Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (quoting the Congressional Record).

This purpose is served by compensating the plaintiff for the value of the money she lost over time due to the defendants' discriminatory acts. The Court is not persuaded by the defendants' argument that pre-judgment interest is inappropriate where punitive damages are awarded. As discussed above, punitive damages serve the entirely different purpose of deterrence and punishment. Prejudgment interest provides the plaintiff with what she would have earned on the money that the jury found was wrongfully withheld by the defendants. To deny such recovery because the facts of the case justify a punitive damage award would bring about an illogical result, the effect of which would undermine both the deterrent purpose of the punitive damages and the remedial purpose of the compensatory and back pay award.

In the Court's view, to award the plaintiff prejudgment interest, even where she has recovered punitive damages, will not overcompensate her. *See Wickham v. Local Union No. 3,* 955 F.2d 831, 835 (2d Cir.), *cert. denied,* 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992). In *Wickham,* the Second Circuit discussed prejudgment interest in the context of LMRA claim and commented that such an award is not appropriate where it is contrary to the intent of the statute; where the statute itself fixes damages deemed fully compensatory as a matter of law; where the defendant acted innocently with no knowledge of the wrongfulness of his actions; where the parties have a good faith dispute regarding liability; and where the plaintiff has caused the delay. *Id.* In the Court's view, none of these considerations counsel against an award of prejudgment interest in this case.

### A. Interest rate

■■■■ The plaintiff urges the Court to calculate all prejudgment interest at the rate of 9% as is set forth in N.Y.Civ.Prac.Law & R. § 5004. As to the award of backpay under Title VII, the Court agrees with other courts in this circuit that have rejected the 9% rate in favor of the United States 52–week treasury bill rate, referred to in 28 U.S.C. § 1961, on the basis that it will ensure that "the plaintiff is sufficiently, but not overly,

compensated." *Ware v. ABB Air Preheater, Inc.*, 1995 WL 574464 (W.D.N.Y.1995) (stating that the Second Circuit approves a flexible and nonrigid approach to the calculation of prejudgment interest); *see also Dailey v. Societe Generale*, 889 F.Supp. 108, 114 n. 4 (S.D.N.Y.1995); *Rao v. New York City Health and Hospitals Corp.*, 882 F.Supp. 321, 327, 329 (S.D.N.Y.1995); *McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 882–84 (S.D.N.Y.1995); *Frank v. Relin*, 851 F.Supp. 87, 91 (W.D.N.Y.1994). Furthermore, the Court accepts the defendants' calculation of the average 52–week treasury bill rate at 4.682%, a figure the plaintiff does not dispute. The Court will apply the rate of 4.682%, compounded annually, to the award for backpay losses including salary and bonuses. *See e.g., Saulpaugh, supra*, 4 F.3d at 145 (stating that the purpose of making the plaintiff whole via an award of back pay can only be achieved if interest is compounded).

**B. The backpay award**

█ "Title VII authorizes a district court to grant prejudgment interest on a back pay award." *Saulpaugh, supra*, 4 F.3d at 145. Failure on the part of the district court to make such an award is ordinarily considered by the Second Circuit to be an abuse of discretion. *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992).

The plaintiff suggests that the jury erred in subtracting from the backpay award an amount for each of the two years in which Luciano claimed no bonus loss, or a total of $8,000.00. *See* Gesinsky Aff. at ¶ 3. For the reasons fully discussed above, the Court declines to disturb the jury's award.

█ Furthermore, in the Court's view the fair and logical approach to calculating the damages is to allocate the $150,714.00 back pay award evenly over the back pay period, as proposed by the defendants. In *McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 884 (S.D.N.Y.1995), the court stated that "[t]he objective of fully compensating the plaintiff is best effectuated by dividing the jury's back pay award evenly over the relevant time period for the purposes of calculating prejudgment interest." *Id.* Based on the evidence submitted by the plaintiff, her

loss was greater in 1992 than it was in the years closest to the judgment. But the plaintiff's 1992 loss was also greater than her 1991 loss. Distributing the loss evenly over the relevant period for purposes of interest calculation will result in adequate compensation for the plaintiff.

By this method the annual loss over the five year period at issue is $30,143.00 (the sum of $150,714.00 divided by 5). Pursuant to this method, the Court awards prejudgment interest against the defendant Olsten Corporation on the backpay award of $150,714.00 in the amount of $14,788.00 through December 31, 1995 plus an additional $21.23 per day for each day in 1996 until judgment is entered. These sums are based on the following calculations, with all figures adjusted to the nearest dollar:

| **1991:** | $30,143.00 at 4.682% interest rate, compounded annually | | |
|---|---|---|---|
| | | | $30,143 |
| | 1/92–12/92 | $1,411 | $31,554 |
| | 1/93–12/93 | $1,477 | $33,031 |
| | 1/94–12/94 | $1,547 | $34,578 |
| | 1/94–12/95 | $1,619 | $36,197 |
| | Total | $6,054 | |

| **1992:** | $30,143.00 at 4.682% interest rate, compounded annually | | |
|---|---|---|---|
| | | | $30,143 |
| | 1/93–12/93 | $1,411 | $31,554 |
| | 1/94–12/94 | $1,477 | $33,031 |
| | 1/95–12/95 | $1,547 | $34,578 |
| | Total | $4,435 | |

| **1993:** | $30,143.00 at 4.682% interest rate, compounded annually | | |
|---|---|---|---|
| | | | $30,143 |
| | 1/94–12/94 | $1,411 | $31,554 |
| | 1/95–12/95 | $1,477 | $33,031 |
| | Total | $2,888 | |

| **1994:** | $30,143.00 at 4.682% interest rate, compounded annually | | |
|---|---|---|---|
| | | | $30,143 |
| | 1/95–12/95 | $1,411 | $31,554 |
| | Total | $1,411 | |

| **1995:** | $30,143.00 | | |
|---|---|---|---|

The plaintiff is entitled to $165,502.00 as of December 31, 1995. At 4.682%, interest accrues on this amount at the rate of $21.23 per day. The plaintiff is entitled to an additional $21.23 per day in 1996 up to the date that judgment is entered, representing interested earned on the compounded amount in 1996.

### C. The award for other expenses under the New York Human Rights Law

The Court allocated the $17,713.00 award of out-of-pocket expenses to the plaintiff's claim under the New York Human Rights Law. The Court will apply a prejudgment interest of 9% to this amount, pursuant to CPLR § 5004. The evidence reflects a loss in 1992 of $2,500.00 for job search expenses and $10,922.00 as a consequence of early withdrawal of IRA funds, a total of $13,-422.00. The evidence reflects a $4,291.00 loss for 1993, based solely on the consequences of the plaintiff's early withdrawal of IRA funds. Based on the calculations set forth below, the Court awards prejudgment interest to the plaintiff against all of the defendants for the state law award of out-of-pocket expenses in the sum of $3,946.00 through December 31, 1995.

| 1992: | 13,422.00 at 9% interest rate | |
| --- | --- | --- |
| | 1/93–12/93 | $1,208 |
| | 1/94–12/94 | $1,208 |
| | 1/95–12/95 | $1,208 |
| | Total | $3,624 |
| 1993: | $4,291.00 at 9% interest rate | |
| | 1/94–12/94 | $386 |
| | 1/95–12/95 | $386 |
| | Total | $772 |

In addition, the plaintiff is entitled to prejudgment interest in the sum of $4.37 per day for each day in 1996 until the entry of judgment in addition to the $3,964.00 that accrued through December 31, 1995.

### CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the defendants' motion for judgment as a matter of law or in the alternative for a new trial is denied; it is further

ORDERED, that the punitive damage award is reduced to $300,000.00, pursuant to 42 U.S.C. § 1981a(b)(3)(D), and that sum is awarded to the plaintiff against the Olsten Corporation; it is further

ORDERED, that pursuant to the jury's verdict, the plaintiff is awarded damages for backpay, including salary and bonuses, in the sum or $150,714.00, against the Olsten Corporation; it is further

ORDERED, that the plaintiff's motion for prejudgment interest on the backpay award is granted and such interest is awarded against the Olsten Corporation in the sum of $14,788.00 through December 31, 1995 plus $21.23 per day for each day after December 31, 1995 until the judgment is entered; it is further

ORDERED, that pursuant to the jury's verdict, the plaintiff is awarded damages for emotional distress under the New York Human Rights Law against all of the defendants in the sum of $11,400.00; it is further

ORDERED, that pursuant to the jury's verdict, the plaintiff is awarded damages for "other expenses" in the sum of $17,713.00 under the New York Human Rights Law against all of the defendants; and it is further

ORDERED, that the plaintiff's motion for prejudgment interest on the "other expenses" of $17,713.00 is granted and prejudgment interest is awarded against all of the defendants in the sum of $3,946.00 through December 31, 1995 plus $4.37 per day for each day in 1996 until the entry of judgment.

The Clerk of the Court is directed to enter judgment accordingly and is advised that this Order closes the case.

**SO ORDERED.**

### CORRECTING ORDER

SPATT, District Judge.

This Order corrects a clerical error in the Court's prior Order dated January 21, 1996. The January 21, 1996 Order incorrectly provides that the plaintiff shall be awarded prejudgment interest on the out-of-pocket expenses award in the sum of $3,946.00 through December 31, 1995 plus the sum of $4.37 per day for each day in 1996 until the entry of judgment.

The correct figures for prejudgment interest on the jury's award for out-of-pocket expenses in the sum of $17,713.00 are as follows: the plaintiff is awarded $4,396.00 in prejudgment interest through December 31,

1995 plus $4.37 per day for each day in 1996 until the entry of judgment.

The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**