Sharon M. DETERS, Plaintiff,

v.

EQUIFAX CREDIT INFORMATION
SERVICES, INC., Defendant.

No. 96–2212–JWL.

United States District Court,
D. Kansas.

Oct. 3, 1997.

Warden, Kelly W. Milligan, Jeannie M. DeVeney, Spencer, Fane, Britt & Browne, Overland Park, KS, for Equifax Credit Information Services, Inc.

Daniel S. Rabin, Berman, Singer & Rabin, P.A., Overland Park, KS, for National Credit Services Corp.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff brought Title VII sexual harassment claims against defendant employer. Trial was held to a jury in July, 1997, and the jury awarded plaintiff $5,000 in compensatory damages and $1,000,000 in punitive damages. Pursuant to defendant's motion (Doc. 164), the court amended plaintiff's judgment for punitive damages to $295,000 to bring her total damages within the statutory cap (Doc. 167). The matter is presently before the court on defendant's renewed motion for judgment as a matter of law as to punitive damages, or in the alternative for a new trial or remittitur of the punitive damages. For the reasons set forth below, defendant's motion is denied in its entirety.

### I. Background

Plaintiff was an employee of defendant in its Lenexa, Kansas office. Plaintiff presented evidence at trial that she was subjected to hostile environment sexual harassment by at least four of defendant's male employees: Mark Barnes, Kelly McKinney, William Pike, and her immediate supervisor, Eric Hunter. Plaintiff also presented evidence that one of her female co–workers, Angel Pernice, also suffered sexual harassment at the hands of Mr. McKinney. In response to this harassment, plaintiff repeatedly complained to the general manager of the Lenexa office, Jim Taylor. As the court explains more fully below, the plaintiff's evidence entitled the jury to conclude that Mr. Taylor's responses to these complaints were woefully inadequate.

### II. Motion for Judgment as a Matter of Law

#### A. Introduction

At the close of plaintiff's evidence and at the close of all the evidence at trial, defen-

Michael S. Ketchmark, Joseph K. Eischens, Ketchmark & Eischens, L.L.C., Kansas City, MO, for Sharon M. Deters.

William C. Martucci, Spencer, Fane, Britt & Browne, Kansas City, MO, Michaela M.

dant moved for judgment as a matter of law on all issues pursuant to Fed.R.Civ.P. 50(a). The court denied defendant's motion. Defendant now renews its motion for judgment as a matter of law as to plaintiff's claim for punitive damages pursuant to Fed.R.Civ.P. 50(b).

■■■ Judgment as a matter of law under Rule 50(b) "should be cautiously and sparingly granted." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988). The jury's verdict must be affirmed if, "viewing the record in the light most favorable to [the nonmoving party], there is evidence upon which the jury could properly return a verdict for [the nonmoving party]." *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.1996). A court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its conclusions for those of the jury. *Id.* On the other hand, judgment as a matter of law must be granted if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Id.* at 1546–47 (citing Fed. R.Civ.P. 50(a)). A legally sufficient basis requires more than "a scintilla of evidence" favoring the nonmoving party. *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

### B. Punitive Damages

■■ Defendant moves for judgment as a matter of law on plaintiff's claim for punitive damages. Punitive damages under Title VII are appropriate when an employer engages in "a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

Plaintiff presented compelling evidence that Mr. Taylor, the general manager of defendant's Lenexa office, acted with malice or reckless indifference to plaintiff's rights.

Plaintiff testified that she repeatedly reported Mr. Barnes' harassing conduct, Mr. McKinney's harassing conduct, Mr. Hunter's harassing conduct, and Mr. Pike's harassing conduct to Mr. Taylor. On most occasions, Mr. Taylor indicated he would "take care of" the problem, but the harassment continued. Plaintiff testified that on at least one occasion, she reported harassment to Mr. Taylor while she was crying. On another occasion, according to plaintiff, Mr. Taylor responded to plaintiff's complaints by instructing her that her harassers were "revenue producers" for the company, and that she was not a revenue producer. Mr. Taylor proceeded to tell plaintiff that one needs to be "rough around the edges" to be a successful collector. Plaintiff testified that he told her, in effect, that being called a "fucking cunt" was just part of the roughness he described. The jury was entitled to believe all of this evidence.

Defendant argues Mr. Taylor's conduct is irrelevant because it believes the standard for awarding punitive damages is whether a member of an employer's "upper management" discriminated with the requisite malice or reckless indifference to a plaintiff's rights. *See Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 869 (11th Cir.1997). Defendant believes an employee is an upper management employee only if he or she holds one of the very highest levels of management or policy making authority within the company.

■■ The court is not convinced the Tenth Circuit would adopt defendant's proposed standard. In an analogous situation, the Tenth Circuit used language implying that malice or reckless indifference by "management level" employees is sufficient to impute employer liability for punitive damages. *See Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1262–64 (10th Cir.1995) (discussing employer liability for punitive damages based on respondeat superior theory and using "management level employee" terminology instead of "upper management employee" terminology). Although *Fitzgerald* is not directly applicable to this case,[1] the

---

**1.** This case is unlike *Fitzgerald* because the issue of punitive damages was submitted to the jury here only on a direct liability theory and not on a respondeat superior theory. Although neither plaintiff nor defendant requested instructions based on a respondeat superior theory, the court believes it would have been proper to submit the punitive damages issue to the jury under such a theory. *See Fitzgerald*, 68 F.3d at 1263 (citing

court believes it is sufficiently analogous to provide guidance as to the proper standard for employer liability in the Tenth Circuit. The "management level employee" standard requires the court to look at the "stature and authority of the agent to exercise control, discretion and independent judgment over a certain area of a business with some power to set policy for the company." *Id.* at 1263.

The court believes there was sufficient evidence for the jury to find that Mr. Taylor, the general manager of defendant's Lenexa office, was a management level employee. Plaintiff presented evidence that Mr. Taylor had the stature and authority to exercise control, discretion, and independent judgment over the hiring and firing of all the employees at the Lenexa office. Mr. Taylor had the power to set policy for the company at this office, certainly as to personnel matters. Accordingly, Mr. Taylor's malice or reckless indifference was sufficient to impute liability for ·punitive damages to defendant.

The court finds it properly submitted the issue of punitive damages to the jury. Defendant's motion for judgment as a matter of law is denied.

### III. Motion for New Trial or Remittitur

#### A. Introduction

 Defendant moves the court, in the alternative, to grant a new trial pursuant to Fed.R.Civ.P. 59, or a remittitur of plaintiff's punitive damages award. Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 849–50,· 78 L.Ed.2d 663 (1984); *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir.1993). They are "not regarded with favor and should only be granted with great caution." *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.1991).

 In reviewing a motion for a new trial the court must view the evidence in the light most favorable to the prevailing party. *Griffin v. Strong,* 983 F.2d 1544, 1546 (10th Cir.1993). A new trial based upon an error of law is unwarranted unless that error affected the substantial rights of the parties.

Fed.R.Civ.P. 61; *Heyen v. United States,* 731 F.Supp. 1488, 1489 (D.Kan.1990), *aff'd,* 945 F.2d 359 (10th Cir.1991). "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.,* 710 F.2d 1442, 1443 (10th Cir.1983). The court should "ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equip.,* 464 U.S. at 553, 104 S.Ct. at 848.

 Similarly, remittiturs are committed to the sound discretion of the trial court. *Royal College Shop v. Northern Ins. Co.,* 895 F.2d 670, 677 (10th Cir.1990). The court may order a remittitur if it deems a damages award to be excessive for reasons other than jury passion and prejudice. *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1561 (10th Cir.1991). Excessiveness which results from jury passion and prejudice, however, is not a proper subject for remittitur and requires a new trial. *Id.*

Defendant directs the court's attention to several perceived grounds for a new trial or remittitur. First, defendant argues for a new trial on the ground that the jury's award was based on passion and prejudice. Next, the defendant argues it is entitled to a remittitur because the size of plaintiff's punitive damages award violated the United States Constitution's guarantee of substantive due process. *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Finally, the defendant attacks various jury instructions and an evidentiary ruling as independent grounds for a new trial. The court addresses defendant's attack on the jury instructions and evidentiary ruling first because part of defendant's claim of jury passion and prejudice is based on these instructions and this ruling.

#### B. Jury Instructions and Admission of Kelly McKinney Video Tape

##### 1. Jury Instructions

Defendant argues that the court failed to instruct the jury properly about the effect of its sexual harassment policy and that the

*Restatement (Second) of Torts* §§ 909(b, d) (allowing employer liability to be imputed based on reckless retention of harasser or ratification of harasser's conduct)).

instructions incorrectly stated the law on employer liability. Defendant believes these errors mandate a new trial.

■■■■ In the Tenth Circuit, a district court's decision whether to give a particular instruction is within its sound discretion. *See Harrison,* 112 F.3d at 1442 (citing *Allen v. Minnstar,* 97 F.3d 1365, 1368 (10th Cir. 1996)). As to the instructions as a whole, the court must provide correct statements of the governing law and provide the jury with ample understanding of the issues and applicable standards. *Harrison,* 112 F.3d at 1442 (citing *Allen,* 97 F.3d at 1368).

■■■■ Defendant argues the court abused its discretion in failing to give the following instruction as part of jury instruction 14:

> If an employer has a sexual harassment policy in place and that policy is made known to employees, then the employer can only be liable for hostile environment sexual harassment if superiors at the management–level or Human Resource employees knew about the conduct and did nothing.

Defendant's argument is without merit because it misstates the law. While the existence of a sexual harassment policy is "plainly relevant" to the employer liability inquiry, *see Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 71–73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), the Supreme Court has "reject[ed][the] view that the mere existence of a grievance procedure and a policy against discrimination, coupled with [plaintiff's] failure to invoke that procedure, must insulate [defendant] from liability." *Id.* Employer liability is proper in the Tenth Circuit when, among other methods of proof, a plaintiff can "establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Harrison,* 112 F.3d at 1444 (citation omitted). In other words, once a plaintiff establishes that the employer had actual or constructive notice, the inquiry shifts to whether the defendant employer's response was appropriate.

■■■■ Defendant contends, however, that when the evidence supports only constructive knowledge, an employer's comprehensive and well–enforced sexual harassment policy is exculpatory. *See Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548, 1554 (11th Cir.1997) ("we hold that an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim premised on constructive knowledge of the harassment when the employer has adopted an anti–discrimination policy that is comprehensive, well–known to employees, vigorously enforced, and provides alternate avenues of redress."). The court disagrees both with defendant's premise and with defendant's conclusion. Defendant's premise is wrong because the evidence in this case supported an inference that the defendant had *actual* knowledge of sexual harassment at the Lenexa office. Plaintiff testified she repeatedly told Mr. Taylor about the harassment she suffered. As the court has already noted, Mr. Taylor was a managerial agent of defendant because he had the stature and authority to exercise control, discretion, and independent judgment over the hiring and firing of the employees at the Lenexa office. *See* supra at 1385. He had the power to stop the harassment. As such, knowledge given to him was knowledge imputed to the company. *See Fitzgerald,* 68 F.3d at 1263 (defining "managerial agent" for purposes of imputing punitive damages to employer); *see also Torres v. Pisano,* 116 F.3d 625, 636–38 (2d Cir. 1997); *Young v. Bayer Corp.,* 123 F.3d 672, 673–74 (7th Cir.1997). Defendant's conclusion is wrong because the Tenth Circuit does not allow an employer to exculpate itself by merely promulgating a sexual harassment policy and then claiming ignorance. *See Harrison,* 112 F.3d at 1444; *see also Meritor Sav. Bank,* 477 U.S. at 71–73, 106 S.Ct. at 2408. Accordingly, the court finds it did not abuse its discretion in failing to give defendant's proposed instruction.

■■■■ Defendant further argues that jury instructions 13 and 21 failed to provide correct statements of the governing law and failed to provide the jury with an ample understanding of the relevant issues and applicable standards. Plaintiff responds that defendant has not preserved error as to these two jury instructions because it failed to object to them specifically at trial. *See Unit Drilling Co. v. Enron Oil & Gas Co.,* 108 F.3d 1186, 1190 (10th Cir.1997) (citing

Fed.R.Civ.P. 51). The court agrees with plaintiff. Defendant did not object to instructions 13 and 21 at trial.[2] Therefore, the court reviews these two instructions only for "plain error[,] [which] requires a finding that the instructions were 'patently plainly erroneous and prejudicial.'" *See Unit Drilling Co.*, 108 F.3d at 1190 (citing *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 924 (10th Cir.1984)).

Defendant's only argument for plain error with respect to instruction 13 is the court's failure to instruct as to the effect of defendant's sexual harassment policy. Because the court has already rejected that argument, it need go no further. The court finds no plain error in instruction 13.

■ Jury instruction 21 reads as follows:

In addition to the damages previously mentioned in previous instructions, you may, but are not required to, award an injured person punitive damages in order to punish the defendant for some extraordinary misconduct and to serve as an example or warning to the defendant and others not to engage in such conduct.

In order to award punitive damages to the plaintiff, you must find that the defendant acted with malice or reckless indifference to the plaintiff's right to be free from hostile work environment sexual harassment.

Defendant argues the court's failure to define specifically the terms "malice" and "reckless indifference" allowed the jury to rely on passion and prejudice to award punitive damages to plaintiff even though the evidence at trial supported only negligent conduct. The court disagrees. As the court has already determined, there was ample evidence at trial for the jury to find defendant's agents acted with reckless indifference to plaintiff's federally protected rights. Furthermore, jury instruction 21 is a near verbatim recita-

tion of 42 U.S.C. § 1981a(b)(1), the statute governing the award of punitive damages in a Title VII case. The court finds no plain error in instruction 21. Defendant's motion for a new trial based on incomplete or erroneous jury instructions is denied.

## 2. Video Tape

■ Defendant argues that the court improperly admitted a surreptitiously obtained video tape of Mr. McKinney describing how he leered at Ms. Pernice's breasts and body during a cab ride on an out–of–town business trip. Defendant believes this evidence was improper character evidence under Fed. R.Evid. 404(b) and that it was unfairly prejudicial under Fed.R.Evid. 403.

Defendant's rule 404(b) argument is without merit. The court admitted the videotape not as evidence of Mr. McKinney's character or his propensity to sexually harass, but rather to show that Mr. Taylor and management officials at defendant's Atlanta office had notice thereof. *See* Fed.R.Evid. 404(b) ("Evidence of other . . . wrongs . . . may . . . be admissible [to show] knowledge."). According to plaintiff, Mr. Taylor saw the tape and informed defendant's Atlanta home office of its contents. Mr. Taylor's knowledge of Mr. McKinney's harassing conduct is relevant to the issue of whether the defendant recklessly retained Mr. McKinney for purposes of imputing liability for punitive damages. *See* supra at 1385. The court rejects defendant's rule 404(b) argument.

■ Defendant's rule 403 argument is also without merit. The court does not believe the probative value of the McKinney tape was substantially outweighed by the danger of unfair prejudice. See Fed.R.Evid. 403; *United States v. Young*, 952 F.2d 1252, 1258 (10th Cir.1991). The tape weighs heavily on the probative side of the rule 403 scale.

---

**2.** At footnote 10 on page 10 of defendant's memorandum in support of its motion, defendant argues it preserved error as to instruction 21 (a Title VII punitive damage instruction) by objecting to an unrelated portion of plaintiff's proposed instruction 27 (a Kansas common law punitive damage instruction for the tort of outrage) in the parties' pretrial papers. This argument is frivolous. Not only did defendant fail to object to the court's Title VII punitive damage instruction at

trial, it failed to object to plaintiff's proposed Title VII punitive damage instruction (plaintiff's proposed instruction 24) in its pretrial papers, and it failed to submit a punitive damage instruction of its own that might have allowed the court to consider its (post–trial only) request for an instruction on the definition of "malice" and "reckless indifference." Such an argument undercuts the persuasiveness of defendant's papers.

One of the key issues at trial (and a key issue now in defendant's post–trial motions) was whether defendant could be charged with knowledge of the conduct of Mr. McKinney and the other harassers. Although Mr. McKinney does not discuss harassment of plaintiff on the tape, the tape does represent conduct consistent with what plaintiff complained about. Because Mr. Taylor saw the tape, the tape went to the heart of the knowledge issue. The tape weighs less heavily on the unfair prejudice side of the scale. There was little danger the jury would use its contents for an improper purpose, and the jury was instructed along those lines.[3] This tape, although damning of Mr. McKinney's conduct, was not unfairly so.[4] The court finds the McKinney video tape was properly admitted into evidence. Defendant's motion for a new trial based on improper admission of the tape is denied.

### C. Jury Passion and Prejudice

■ Defendant believes passion and prejudice infected the jury's verdict. As support for this belief, defendant points to the size of the verdict, the court's alleged improper admission of the McKinney video tape, and the court's failure in jury instruction 21 to define specifically the terms "malice" and "reckless indifference." The court does not need to reconsider the video tape or the jury instruction because it has already determined that both were proper. Therefore, the court limits its inquiry to determining whether the size of the punitive damage award reflected passion and prejudice.

■ Defendant points to two Tenth Circuit cases to support its contention that an excessive punitive damage award may support an inference of jury passion and prejudice. *See Fitzgerald*, 68 F.3d at 1262 ("Plainly excessive damages may support an inference that bias, passion or prejudice contributed to the award."); *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 459 (10th Cir. 1989) (disproportionate punitive damage award suggests the possibility of jury passion and prejudice). The court agrees that, in a proper case, excessive punitive damages can support a finding of jury passion and prejudice.

■ The court does not believe the size of the jury verdict in this case indicates passion and prejudice. To the contrary, the court believes the jury acted with calculation and reason. The main purposes of punitive damage awards are to punish and deter reprehensible conduct. *See BMW of North America v. Gore*, 517 U.S. 559, ——, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996). Defendant is a multi-billion dollar company.[5] The jury easily could have believed a punitive damage award of $1,000,000[6] was needed to sting the defendant and deter it from allowing sexual harassment in the future.

Furthermore, the cases defendant cites which granted a new trial because of excessive damage awards reveal an obvious likelihood of jury passion and prejudice that simply was not present in this case. In *Fitzgerald*, the jury awarded economic damages against defendant based on the remote speculation that the plaintiff would be awarded a contract with a third party over whom the defendant had no control, and awarded emotional damages based on a racially "incindiary climate ... originat[ing] from a variety of sources, many [of which were] completely beyond the control of [the defendant]." 68 F.3d at 1265–66. In *Kelley*, the jury awarded $1.25 million in punitive damages when the plaintiff was re-

---

3. Defendant maintains that plaintiff's closing argument urged the jury improperly to use the tape to infer that Mr. McKinney was a harasser. Such an impropriety in plaintiff's closing argument was not unduly prejudicial to defendant in light of the ample other evidence that Mr. McKinney sexually harassed the plaintiff.

4. The court notes that it excluded under rule 403 several other pieces of evidence offered by plaintiff, including evidence that defendant's agents may have been under the influence of drugs during some of the harassment episodes.

5. Defendant's gross operating revenue for the year ended December 31, 1996 was $1.8 billion. The jury award of $1 million is less than one–tenth of one percent of defendant's gross revenue.

6. Because the court is evaluating whether the jury acted with passion and prejudice, it considers the actual verdict the jury rendered instead of the amount after application of the $300,000 statutory cap.

quired to prove them *beyond a reasonable doubt* even though the evidence supporting such an award was "problematic" and "thin." 882 F.2d at 459–60. This case has none of the indicia of passion and prejudice that were present in *Fitzgerald* and *Kelley*. The court denies defendant's motion for a new trial based on jury passion and prejudice.

### D. Substantive Due Process

■ Defendant claims that plaintiff's $295,000 [7] punitive damage award violates the due process clause of the United States Constitution.[8] In doing so, defendant relies heavily on the United States Supreme Court's decision in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). In that case, an Alabama jury awarded $4 million in punitive damages (subsequently reduced to $2 million by the Alabama Supreme Court) because BMW failed to disclose that it performed minor touch-up painting on some of its new cars. *Id.* at ——, 116 S.Ct. at 1593–94. The *Gore* jury awarded $4 million in punitive damages even though plaintiff's injuries were purely economic and amounted to only $4,000. *Id.* at ——, 116 S.Ct. at 1593. In a 5–4 decision, the Supreme Court struck down the punitive damage award on Fourteenth Amendment substantive due process grounds. 517 U.S. at ——, 116 S. Ct. at 1604. Defendant in this case argues its plight is like that of BMW and that this court should order a remittitur of plaintiff's $295,000 punitive damage award because it violates substantive due process.

As a preliminary matter, the court notes, as plaintiff invites it to do, that there is a fundamental distinction between the constitutional basis for the *Gore* decision and the constitutional basis upon which defendant asks the court to act. The Supreme Court's decision in *Gore* held that the Alabama jury's award violated *Fourteenth Amendment* substantive due process, which applies solely to

state action. The only action at issue in this case is action by the *federal* system. Therefore, defendant asks this court to consider a *Fifth Amendment* substantive due process challenge.

Plaintiff and defendant disagree as to how much difference this distinction makes, but the court does not need to decide the issue. Instead, the court recognizes that some of the reasoning the Supreme Court used to invalidate the punitive damage award in *Gore* simply is not present in this case. A major concern of the Court in Gore was the impropriety of an Alabama jury increasing a punitive damage award based on conduct outside of Alabama that was perfectly legal where it occurred. *Id.* at ——, ——, 116 S.Ct. at 1597, 1604 ("by attempting to alter BMW's nationwide policy, Alabama would be infringing on the policy choices of the other states"; "While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation."). As plaintiff notes, these concerns are basically federalism concerns which have no bearing on this, a purely federal, case.

Keeping in mind that federalism concerns are lacking in this case, the court proceeds to the heart of the substantive due process issue—evaluating this case under *Gore*. The Tenth Circuit announced a definitive interpretation of *Gore* in *Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634 (10th Cir.1996), which came to that court on remand from the United States Supreme Court for reconsideration in light of the *Gore* decision. *OXY USA, Inc. v. Continental Trend Resources, Inc.,* —— U.S. ——, 116 S.Ct. 1843, 134 L.Ed.2d 945 (1996). In *Continental Trend,* a jury had awarded the plaintiff $269,000 in compensatory damages and $30 million in punitive damages for claims of tortious interference with contract and interference with prospective business advantage. 101 F.3d at 635. The Tenth

---

**7.** Because the court is now concerned with whether plaintiff's *actual* punitive damage award comports with due process and not with whether the jury's intended award comports with due process, it evaluates the actual punitive damage judgment of $295,000 instead of the jury's award of $1,000,000.

**8.** Plaintiff claims defendant waived this argument because the argument was not specifically set forth in defendant's Rule 59 motion (Doc. 170). The court disagrees. Defendant fully briefed the constitutional issue in the memorandum in support of its motion (Doc. 171). Defendant incorporated its memorandum into its motion by reference.

Circuit, relying on *Gore*, reduced the $30 million punitive damage award to $6 million. *Id.* at 643. In doing so, the Tenth Circuit laid out its interpretation of the analytical framework suggested by *Gore*. The court uses the Tenth Circuit's interpretation to analyze the constitutional issue.

"First, the punitive damages award must relate to conduct occurring within the state." *Continental Trend*, 101 F.3d at 636–37; *Gore*, 517 U.S. at —— – ——, 116 S.Ct. at 1595–97. As the court has already determined, federalism concerns such as this simply are not present in this case. This factor in the *Gore* analysis does not weigh in favor of ordering a remittitur.

"Second, a defendant must receive 'fair notice ... of the conduct that will subject him to punishment.'" *Continental Trend*, 101 F.3d at 638 (quoting *Gore*, 517 U.S. at ——, 116 S.Ct. at 1598). The court has "no difficulty with this requirement." *See Continental Trend*, 101 F.3d at 638. It has been established since 1991 that punitive damages under Title VII are appropriate when an employer engages in "a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

42 U.S.C. § 1981a(b)(1). This factor in the Gore analysis does not weigh in favor of ordering a remittitur.

"Third, defendant must receive 'fair notice ... of the severity of the penalty that [the government] may impose.'" *Continental Trend*, 101 F.3d at 638 (quoting *Gore*, 517 U.S. at ——, 116 S.Ct. at 1598). "[W]ith respect to this requirement ... the Supreme Court set forth ... three 'guideposts:' (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of the punitive award to the actual harm inflicted on plaintiff, and (3) the comparison between the punitive award and the civil or criminal penalties that could be imposed for comparable misconduct." *Continental Trend*, 101 F.3d at 638; *Gore*, 517 U.S. at —— – ——, 116 S.Ct. at 1598–1603. The court does not need the Supreme Court's three guideposts to traverse this road; Congress has brightly illuminated it. Defendant had fair notice of the severity of the penalty the government could impose because § 1981a(b)(3) explicitly gives defendant such notice. The fair notice of penalty factor does not weigh in favor of ordering a remittitur.[9]

Defendant's large size also mitigates in favor of awarding a substantial sum.[10] A

---

**9.** An evaluation of the three guideposts confirms the court's conclusion that defendant had fair notice of the possible severity of the punitive damages. The first guidepost, the degree of reprehensibility of defendant's conduct, directs the court toward a finding that defendant had fair notice because "the seriousness and reprehensibility of intentional [sexual harassment] discrimination in the workplace far outweighs a simple complaint that a new car was repainted before sale." *McKnight v. Circuit City Stores Inc.*, No. 3:95CV964, 1997 WL 328638, at *7 (E.D.Va. March 12, 1997); *see also Continental Trend*, 101 F.3d at 638; *FDIC v. Hamilton*, 122 F.3d 854, 861 (10th Cir.1997). The second guidepost, the ratio of the punitive award to the actual harm inflicted on plaintiff, directs the court toward a finding that defendant had fair notice because when the actual damages plaintiff suffered *and the potential damages she could have suffered* are considered, the punitive–to–compensatory ratio in this case is well within reason. *See Continental Trend*, 101 F.3d at 639–40; *Gore*, 517 U.S. at —— n. 34, 116 S.Ct. at 1602 n. 34; *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460–62, 113 S.Ct. 2711, 2722, 125 L.Ed.2d 366 (1993). Furthermore, this case exemplifies the Supreme Court's admonition that " 'low awards of compensatory damages may properly support a higher ratio than high compensatory awards,

if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.' " *Continental Trend*, 101 F.3d at 639 (quoting *Gore*, 517 U.S. at ——, 116 S.Ct. at 1602). The third guidepost, the comparison between the punitive award and the civil or criminal penalties that could be imposed for comparable misconduct, also directs the court toward a finding that defendant had fair notice because the civil penalty available was exactly $300,000 for such misconduct. § 1981a(b)(3).

**10.** defendant argues this court should follow the Seventh Circuit's lead in allowing punitive damage awards equal to the statutory cap in only the most egregious cases of discrimination. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir.1995). Of course, this is not a constitutional argument at all; it is a statutory and procedural argument. In any event, the court declines to follow the Seventh Circuit's lead. Ordering a remittitur merely because the court does not view a particular case as the "most egregious" improperly invades the province of the jury and improperly fails to recognize

large award may be necessary in order to command defendant's attention and change defendant's conduct. *See FDIC v. Hamilton*, 122 F.3d 854 861–62 ("Although we have been cautioned that the size of the defendant should not ordinarily be a very significant factor, we have also concluded that it is not irrelevant either."); *Continental Trend*, 101 F.3d at 641 ("$50,000 may be awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation."); *McKnight*, 1997 WL 328638, at *7 (a low punitive damage award "would not signal to Circuit City, or any other corporation for that matter, the intolerableness of race discrimination [or sexual harassment] in today's society. A penalty of $16,000 to $50,000 for discriminating against [an employee] is a drop in the bucket for a multi–billion dollar corporation such as Circuit City. At that rate, any corporation looking to make profits could conclude that it is cheaper to maintain the status quo, continue to discriminate, and dole out the few thousand dollar penalty. This is exactly the result that punitive damages are designed to combat."). Furthermore, although the Supreme Court counsels caution in considering the size of the defendant, the required level of caution subsides when it is the federal government ordering the damages instead of one of the states. *See Continental Trend*, 101 F.3d at 641 ("the Supreme Court downplayed the defendant's wealth as a justification for increasing punitive damages, by emphasizing that [the defendant's] status as a large active participant in the national economy 'implicates the federal interest' in prohibiting states from unduly burdening interstate commerce and 'imposing its regulatory policies on the entire Nation.'") (emphasis added) (quoting *Gore*, 517 U.S. at ——, 116 S.Ct. at 1604).

Finally, the court notes that this case is nothing like the Tenth Circuit cases that have ordered remittiturs under *Gore*, nor is it like *Gore* itself. *Hamilton, Continental Trend,* and *Gore* all involved mere economic damages. *See Hamilton*, 122 F.3d 854, 861–62; *Continental Trend*, 101 F.3d at 638; *Gore*, 517 U.S. at ——, 116 S.Ct. at 1599. This case, on the other hand, involves personal injury and the potential for deep emotional wounds. The Tenth Circuit has said "torts causing only economic injury [are] less worthy of large punitive damage awards than torts inflicting injuries to health or safety." *Hamilton*, 122 F.3d 854, 862 (quoting *Continental Trend*, 101 F.3d at 638 (citing *Gore*, 517 U.S. at ——, 116 S.Ct. at 1599)). The court does not feel this is an appropriate case for it to extrapolate *Hamilton, Continental Trend,* and *Gore* beyond their economic–injury roots. The court does not believe the punitive damage award in this case violates substantive due process. Accordingly, defendant's motion for a remittitur on this basis is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for judgment as a matter of law or in the alternative for a new trial or remittitur is denied in its entirety.

**IT IS SO ORDERED.**

that a defendant's available financial resources is an important factor in determining the appropriate level of punitive damages. *See supra* part II.B. (finding that evidence supported jury's punitive damage award); *Hamilton*, 122 F.3d 854, 861 (and cases cited) (noting that size of company is a relevant factor in assessing punitive damage claim); *see also Luciano v. Olsten Corp.*, 912 F.Supp. 663, 672 (E.D.N.Y.1996) ("The Court has reservations as to the reasoning of the Seventh Circuit that the maximum award allowable by Title VII should be reserved for the most egregious cases."), *aff'd*, 110 F.3d 210, 220–22 (2d Cir.1997) (detailed analysis confirming that the lower court's hesitation was proper).