Christopher L. LAMBERT, III; William E. Mowrey; and James M. Heath, Plaintiffs,

v.

FULTON COUNTY, GEORGIA, et al., Defendants.

No. Civ.A.1:97CV1243 TWT.

United States District Court, N.D. Georgia, Atlanta Division.

May 30, 2000.

Edward D. Buckley, III, Francis C. Schenck, Greene Buckley Jones & McQueen, Atlanta, GA, for Chester L. Lambert, III, plaintiff.

Edward Katze, Timothy L. Williams, Constangy & Brooks & Smith, Atlanta, GA, R. David Ware, Ware & Leonard, Atlanta, GA, for Fulton County, Georgia, defendant.

## ORDER

THRASH, District Judge.

This is an employment discrimination case. The case was tried before a jury for two weeks. On May 5, 2000, the jury returned a verdict for the Plaintiffs. After the jury was discharged, the Court requested a conference with counsel prior to entry of judgment upon the verdict. The conference was held on May 16, 2000. The Court denied the Defendants' motion to dismiss the claims for punitive damages against Defendants Cooper and Regus. Counsel for all parties agreed that the issue of back pay under Title VII was submitted to the jury by agreement. Counsel for Plaintiffs agreed that the compensatory damage awards against Fulton County are subject to Title VII's $300,000 per Plaintiff cap. The Court heard argument on the Defendants' claim that the punitive damages awards are excessive, and allowed both sides the opportunity to submit briefs on this issue. Having carefully considered the arguments of the parties, the Court directs the Clerk to enter judgment in favor of the Plaintiff and against Fulton County in the sum of $300,-000 plus back pay for each Plaintiff and to enter judgment in favor of the Plaintiffs and against the Defendants Regus and Cooper for the sums awarded by the jury for compensatory and punitive damages.

## DISCUSSION

### A. MALICE OR RECKLESS INDIFFERENCE

■ In their brief, the Defendants again argue that the evidence does not authorize an award of punitive damages against Defendants Regus and Cooper. The jury having returned its verdict in favor of the Plaintiffs, the evidence must now be construed in their favor. To support a punitive damages award, a plaintiff must show that the defendant acted with malice or reckless indifference to the plaintiff's federally protected rights. *Reynolds v. CSX Transp., Inc.,* 115 F.3d 860, 869 (11th Cir.

1997) (citing 42 U.S.C. § 1981(a)). Malice means "an intent to harm" and recklessness means "serious disregard for the consequences of [one's] actions." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir.1999); *Splunge v. Shoney's, Inc.*, 97 F.3d 488, 491 (11th Cir.1996). The jury was entitled to conclude that Plaintiffs were made the scapegoats or sacrificial lambs for the situation at Big Creek and that they were singled out for punishment because of their race. Defendant Cooper recommended discipline for the Plaintiffs in reckless disregard for the truth of what happened at Big Creek and the Plaintiffs' efforts to deal with the situation. Defendant Regus acted upon Cooper's recommendation even after he became aware of the flaws in Cooper's report and failed to make any effort to remedy the public humiliation inflicted upon Plaintiffs due to the widespread dissemination of Cooper's biased report. Construing the evidence in favor of the Plaintiffs as the Court must now do, the jury was entitled to conclude that the Defendants acted with reckless indifference to the Plaintiffs' federally protected rights.

■ In their brief, Defendants again argue that the jury was not entitled to consider Defendant Cooper as a proper comparator for disparate treatment purposes. In this connection, the Court charged the jury as follows:

> In comparing the nature of the offense at issue and the nature of the discipline imposed, the quantity and quality of the other employees' misconduct must be nearly identical or of comparable seriousness to prevent second-guessing of employers' reasonable decisions where there is no fair comparison of the employees and their alleged misconduct

The Defendants objected to the inclusion of the phrase "or of comparable seriousness." It was, and is, the Court's view that nearly identical conduct is not the only standard for making a comparison in a disparate discipline case. This case is a good example of the necessity for a "comparable seriousness" standard. The alleged misconduct of Plaintiffs and the alleged misconduct of Defendant Cooper were not nearly identical. They played very different roles in the County's response to the Big Creek situation. Nevertheless, the jury was entitled to conclude that Defendant Cooper's misconduct was much more serious than that of the Plaintiffs. The jury could have concluded that the Plaintiffs were guilty of some degree of negligence in not doing more to remedy the situation at Big Creek. On the other hand, the jury could have concluded that Defendant Cooper was guilty of intentionally slanting his report to justify his recommendation to discipline white supervisors while ignoring similar conduct by black employees. Nevertheless, he was given a letter of reprimand in private and lost no salary or position. The rule of applying apples to apples must not be applied so mindlessly as to fail to see that sometimes the proper comparison is between apples and apple pie.

## B. *EXCESSIVENESS*

The Defendants argue that the punitive damages awarded by the jury are "constitutionally excessive." (Defs.Brief, p. 10). Specifically, Defendants argue that an award of $675,000.00 against Regus and Cooper each violates the constitutional limits set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574–86, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) and *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1336–38 (11th Cir. 1999). There are a number of factors to consider in addressing this argument.

■ First, in *BMW*, the Supreme Court held that a court should consider the "disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award." *BMW*, 517 U.S. at 575, 116 S.Ct. 1589. In following *BMW*, the *Johansen* court explained that "punitive damages must bear a 'reasonable relationship' to actual damages." *Johansen*, 170 F.3d at 1336. At the outset, the Court

concludes that the proper comparison is not limited to the ratio between the lost wages award against Fulton County and the punitive damages award. The proper comparison is between the compensatory damage awards against Regus and Cooper and the punitive damage awards against those Defendants. The verdict awards each Plaintiff $50,000.00 in damages against each individual Defendant to "compensate for emotional pain and mental anguish." The ratio of actual damages to the actual punitive damages awarded for each Plaintiff against each Defendant (4.5:1) is well within, if not below, the constitutional limits regarding punitive damages. *See e.g., Stearns v. Combined Ins. Co. of America*, 1998 U.S. Dist. LEXIS 7494, at 3 (S.D.Ala., Apr. 2, 1998) (refusing to award additional punitive damages against defendant where defendant had already paid punitive damages in a ratio to the compensatory damages of 125:1); *Hampton v. Dillard Dept. Stores*, 18 F.Supp.2d 1256, 1277 (D.Kan. 1998) (holding that ratio of 20:1 of compensatory damages to punitive damages "does not in itself violate due process"); *Deters v. Equifax Credit Info. Svcs.*, 981 F.Supp. 1381, 1389–91 (D.Kan. 1997) (holding that award for plaintiff in Title VII sexual harassment claim of $5,000.00 in compensatory damages and $295,000.00 in punitive damages was not excessive nor violative of the defendant's substantive due process rights under the Constitution).

■ Second, each defendant's conduct was sufficiently reprehensible to justify the punitive damages award as to each plaintiff. "BMW instructs that there are several indicia of reprehensibility: deliberate false statements, acts of affirmative misconduct or concealment of evidence of improper motive, and repetition of tortious conduct." *Johansen*, 170 F.3d at 1335. Defendant Cooper admitted at trial that he considered race to be a legitimate factor in employment related decisions. He admitted that in the meeting in which the fate of the Plaintiffs was decided, he told Mr. Bockman that he was looking at things from the perspective of a white man and should look at it from the perspective of a black man who has had to work for a white man all of his life. Cooper admitted that with regard to each of the Plaintiffs in his May 3, 1996 report, he highlighted the fact that they were "white." (Pls'.Ex. 7). In the course of his cross examination, he admitted that he had left out a number of material facts when he prepared his report. Mr. Regus himself found that "[a] conscious decision was made by [Cooper] to selectively include certain facts while excluding other facts" in his report. (Pls'.Ex. 8). Cooper acknowledged to Regus that he "failed to include in [his] report steps taken by Mr. Bockman and others to respond to complaints of racial harassment at Big Creek because [he] personally did not believe they were sufficient." (Pls'.Ex. 8). Perhaps most significantly, on the very day that he issued his inaccurate and false report, Cooper delivered to the Equal Employment Opportunity Commission a separate position statement which vigorously denied any failure on the part of the Plaintiffs or Fulton County to prevent or correct the alleged racial harassment at Big Creek.

Defendant Cooper admitted that his televised interview announcing that the Plaintiffs would be disciplined ("make no mistake about it") was something he had never done before or since. Cooper admitted to sending his false report to County Commissioner Emma Darnell and releasing it to the media. He admitted that, notwithstanding County Attorney Denval Stewart's admonition that such material could seriously injure the reputations of the Plaintiffs, such warnings were of no consideration to him. Cooper's recommendations for discipline of the Plaintiffs, passed on to County Manager Regus, were followed, down to the personnel regulations sections cited in the discipline notices. (Pls'. Exs. 1, 3 and 5) Defendant Cooper admitted that he did not provide to Regus a copy of the interview with Curtis Brown, an African–American supervisor at

Big Creek who admitted observing racially harassing behavior, drug use by employees on Fulton County property and weapons violations, but failed to report it or do anything else to prevent it.

Construing the evidence in favor of the Plaintiffs, the jury could conclude that Defendant Cooper's misconduct was not a single inadequate report, but repeated acts of deceit through falsification of material facts and omission of material facts. The deceitful conduct occurred not once, but repeatedly with regard to all three Plaintiffs. The false and misleading report report was distributed to the media where Cooper knew it would be disseminated widely. There is no question that Cooper deliberately misstated facts in his report, knowing that this was likely to result in their public discipline and humiliation. Defendants' contention that testimony from witness Josh Kenyon in some way biased the jury is without merit. The Court took appropriate action after the testimony was inadvertently introduced during the reading of a deposition.

█ The evidence at trial showed that Defendant Regus became fully aware as early as May 15, 1996, that the Cooper report was false, fraudulent, misstated facts and intentionally omitted other facts. (Pls'.Ex. 8). Defendant Regus himself testified that as of that time he knew that the report was replete with inaccuracies. Furthermore, he observed Defendant Cooper make a comment in the May 15 meeting which even Regus viewed as "biased." The Cooper report itself characterized each of the Plaintiffs as "white." Little else in the report was true. Notwithstanding his knowledge that the report was biased and inaccurate, Defendant Regus forwarded it to each of the Commissioners. He also followed the precise advice given by Cooper in the report, to discipline the department heads, managers and supervisors at Big Creek. Indeed, he disciplined them pursuant to Article 21, something he admitted he had never done before or since, as recommended in Defen-

dant Cooper's April 29 report. Defendant Regus was aware of Denval Stewart's sharp criticism of the April 29 Cooper report as early as May 3. Nevertheless, Defendant Regus did nothing to correct the misrepresentations disseminated to the Commissioners and the media. Finally, Defendant Regus issued a memo to the Commissioners and a virtually identical press release which recited that after having received Mr. Cooper's report as well as a response from Mr. Bockman, Mr. Regus convened a meeting on May 15, 1996 with a number of individuals, including among them, Mr. Cooper. The memo to the Commissioners and to the press states, "As a result of that meeting, I have taken steps to initiate disciplinary action against three mid level supervisory employees in the Public Works Department." (Pls'.Ex. 46). Nowhere in the memo does Mr. Regus make the contentions that he subsequently made at trial, that the Cooper report was inaccurate, that he knew it and he did not follow it. The jury was authorized to see these conflicting statements as evidence of pretext and, consequently, of discrimination.

█ The third factor to be considered is whether the punitive damage award reflects "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW*, 517 U.S. at 575, 116 S.Ct. 1589. Defendants argue that there is no comparable sanction against individuals for discrimination in the workplace. This argument ignores 42 U.S.C. § 1983 which, in itself, put the Defendants on notice of the possible consequences of violating Plaintiffs' constitutional rights. Significantly, the fine for a criminal conspiracy civil rights violation is a fine of up to $250,000, less than the punitive damage awards. *See* 18 U.S.C. §§ 241 and 3571. It is well settled that a public official will face punitive damages if that person violates a public employee's right to equal protection under the laws with either malice or reckless indifference to federally protected rights. Considering

the guideposts identified in *BMW* and *Johansen*, the punitive damage awards are not excessive.

■■ It is also well settled that the financial circumstances of an individual defendant may be a relevant consideration for an award of punitive damages. The defendant has the burden of proving that his financial circumstances warrant a reduction in a punitive damages award. *Paul v. Avril*, 901 F.Supp. 330, 336 (S.D.Fla.1994) ("although in assessing punitive damages, the court must consider the defendant's financial condition, the burden is on the defendant to introduce evidence of his modest means.") (citing *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir.1978)). The Defendants did not introduce any such evidence in this case. Probably, this was a deliberate trial decision to avoid opening the door to introduction of evidence concerning Fulton County's policy of indemnifying employees against judgments in cases such as this. No evidence having been introduced, the Court has no basis to reduce the punitive damages award on this ground.

## *CONCLUSION*

For these reasons, the Court concludes that the punitive damage awards are not excessive. The Clerk is directed to enter separate judgments in favor of each of the Plaintiffs consistent with this Order.